## Hall *v.* Cheney & a.

If goods are found to have been injured while in charge of a common carrier, the burden of proof is on him to show that the damage happened from some cause which would furnish him with a legal defence.

In case against a common carrier, it is not necessary to allege that a compensation was paid, or agreed to be paid, for carrying the goods.

In Case. The plaintiff declares that the defendants, at, &c., before and on the first day of July, 1852, were common carriers of goods and merchandise, for all persons having occasion to

Hall *v.* Cheney.

employ them, from Barnet, in the State of Vermont, to a place called Fisherville, in Concord, in the county of Merrimack, and on said first day of July, 1852, the plaintiff, at said Barnet, to wit, &c., was possessed of one circular saw, of the value of sixty dollars, as of his proper goods and chattels ; and being so possessed thereof, on the same day, at said Barnet, to wit, at, &c., delivered by his agent to said defendants, the said saw, to carry the same safely and securely from said Barnet to said Fisherville, and the said defendants then and there had and received said saw, to be carried and delivered in manner aforesaid ; yet the defendants did not carry the same saw so that no damage or injury happened thereto, but instead thereof the said saw, on said first day of July, 1852, was broken, and became of no value to the plaintiff, for want of due care and preservation of the same by the said defendants, &c.

Upon the trial, upon the general issue, it appeared that the defendants were partners in the business of common carriers of goods and merchandise, and other things, from Barnet·to Fisherville, under the firm of Cheney & Co.

That the plaintiff sent his circular saw, of nearly four feet diameter, from Northumberland, New-Hampshire, to Fisherville, to be repaired. It was conveyed to Lancaster on a spring board on wagon wheels, and from that place to Barnet, about thirty miles, upon the rack of a stage wagon, and was there delivered by the stage driver to the agent of the defendants on board their express car upon the Passumpsic railroad ; and the stage driver, in behalf of the plaintiff, there paid to the defendants' agent the sum of fifty cents, charged by him for the freight of the saw to Fisherville.

It appeared that the saw was not broken in the manner complained of, when it was taken from the plaintiff's mill, near Northumberland, and that it was so broken, and its value as a saw entirely destroyed, when it was first seen by any witness, after its delivery to the defendants; but there was no direct evidence as to its situation at the time it was delivered to them at Barnet ; the stage driver and another witness, who assisted to

put the same into the express car, testifying that they took no notice of its situation, nor was there any direct evidence at what time or place or in what manner the saw was broken in the manner complained of ; nor what care was taken of it on the way ; but there was much evidence introduced as to the manner in which it was transported to Barnet, the state of the roads, and other circumstances, from which the defendants contended that the jury might infer that the saw was broken and the whole damage done to it before it was delivered to their agent at Barnet.

The court instructed the jury, that the principal point of enquiry for them was, whether the saw was broken and injured in the manner complained of, before it was delivered to the defendants' agent ; because the defendants were bound as common carriers to exercise the highest degree of care and diligence in the transportation of the saw ; were liable for every injury which might happen to it, except such as human care or foresight could not prevent ; an inevitable accident alone would excuse them from liability for injuries to the saw, while it remained in their custody. And as no evidence had been laid before the jury tending to show in what manner the injury had been done to the saw, if it occurred while it was in the defendants' care, they must be held liable for the loss, if the jury were satisfied that the saw was uninjured in the particular complained of, when the defendants received it.

To this instruction the defendants excepted.

The jury having found a verdict for the plaintiff, the defendants move for a new trial by reason of said exceptions, and in arrest of judgment for defect of the declaration.

*Benton & Ray,* for the defendants.

I. The evidence had no legal tendency to establish the facts found by the jury.

II. The verdict was manifestly against all the evidence in the case, and should be set aside for that cause.

The verdict will be set aside, where it is apparent that the

jury have neglected properly to consider the facts, and must have overlooked prominent and essential points in the evidence, so that substantial justice has not been done — *Wendell* v. *Safford*, 12 N. H. 171. If the court are satisfied that the facts of the case were not fully understood at the trial — *Bangor* v. *Brunswick*, 27 Me. 351. If the jury have mistaken their duty with regard to the evidence adduced before them — *Eveleth* v. *Harmon*, 33 Me. 275. Where the verdict is clearly against the weight of evidence — *Wait* v. *McNiel*, 7 Mass. 261 ; *Curtis* v. *Jackson*, 13 Mass. 507. And this, although evidence was given on both sides — *Miller* v. *Baker*, 20 Pick. 285·; *Coffin* v. *Phenix Ins. Co.*, 15 Pick. 291.

If the evidence was not such as would justify the jury in giving the verdict — *Bishop* v. *Perkins*, 13 Conn. 300 ; see, also, 21 Conn. 245 ; *Schwal* v. *Generick*, 13 Conn. 697 ; *Brassfield* v. *Brown*, 4 Rich. 298 ; *Long* v. *Lewis*, 16 Geo. 154, and *Young* v. *Wilson*, 24 Miss. 694, are to the same point.

There was no direct evidence as to the time, manner or place of breaking the saw, but the way in which it was carried, the state of the roads, and the facts and circumstances stated in the case, show that it must have been broken before it was delivered to the defendants, and the finding of the jury to the contrary was against the evidence within the authorities cited.

III. The instructions of the court were erroneous. The jury were instructed that " the defendants, as common carriers, were bound to exercise the highest degree of care and diligence in the transportation of the saw, and were liable for every injury which might happen to it, except such as human care and foresight could not prevent, and that inevitable accident alone would excuse them from liability for injuries to it, while it remained in their custody." It is a familiar maxim that common carriers are exempted from losses occasioned by " the act of God or the public enemy." This last exception was entirely disregarded in the instructions of the court. In this age of the world it would be possible for human care and foresight to prevent almost all

losses to goods in the charge of common carriers from the public enemy.

Then, again, the phrase, "inevitable accident," means substantially that which is unavoidable, or certain to happen, and cannot include acts of the public enemy.

The most recent and best considered cases also make a plain distinction between the act of God and inevitable accident. 1 Parsons on Contracts, Title, Bailment, 635 ; *McArthur* v. *Sears*, 21 Wendell 190.

In the *Proprietors of Trent Navigation* v. *Wood*, 4 Douglass 287, 290, Lord *Mansfield* says : " The act of God is natural necessity, as wind and storms, which arise from natural causes, and is distinct from inevitable accident." They are by no means synonymous. An injury from an inundation, a tempest, or sudden illness, all which excuse the carrier, cannot be regarded as inevitable, because it is seldom that losses from these causes could not have been prevented by previous forethought or precaution. Sir William Jones substituted the phrase inevitable accident for act of God, in his work on Bailments. His editor, Mr. Balmanus, disapproves of the change in his note to page 122, in these terms : " Long use seems to have rendered the legal sense and meaning of the words " act of God" sufficiently perspicuous, and would , perhaps make the substitution of others " attended with inconvenience."

*Burns & Fletcher*, for the plaintiff.

PERLEY, C. J.   The saw was damaged somewhere in the course of transportation between Northumberland and Fisherville ; but there was no direct evidence to show whether before or after it was delivered to the defendants. There was, however, much evidence as to the manner in which it was carried to Barnet, where the defendants received it, the state of the roads, and other circumstances. Whether the saw was injured before or after it came to the possession of the defendants, was a fact to be inferred from the circumstances as they appeared on trial,

and a question peculiarly proper for the jury to determine. In a case like this, " where presumptions are to be raised and inferences drawn, and evidence is to be weighed, the verdict will not be set aside, although the court might have decided the other way upon the facts." *Wendell* v. *Safford*, 12 N. H. 171, 178.

The court are not able to see in the case any such decided preponderance in the weight of evidence as leads them to the conclusion that the jury " misunderstood or disregarded the instructions of the court, or neglected to consider the facts, and overlooked prominent and essential points in the evidence." The verdict cannot be set aside on this ground.

The familiar rule of the common law charges a common carrier with all losses, except such as are caused by the act of God or the public enemy, and this rule has undoubtedly been adopted as the law of this State. In *Moses* v. *Norris*, 4 N. H. 304, 306, *Richardson*, C. J., remarks that the common carrier is answerable for all losses happening otherwise than by " inevitable accident." The decision of that case did not require the court to consider the particular limits of the exceptions to a common carrier's liability, and none of the authorities there cited, except Jones on Bailments, use the term, " inevitable accident," and we have no idea that the court, in the case of *Moses* v. *Norris*, intended, by using the term, " inevitable accident," in that general way, to introduce any modification of the ancient and well established rule of the common law.

In the present case it was quite unnecessary that the jury should be particularly instructed as to the exact limits of a carrier's liability, because, if the saw was injured while in charge of the defendants, there was no evidence tending to show any fact which would in law discharge them, and the burden of proof was on them to show that the damage happened from some cause that would furnish them with a legal excuse. Angell on Carriers, secs. 202 and 472.

The phrase, " inevitable accident," used by the court in their instructions to the jury, was not probably intended as any thing more than a general statement of the common carrier's legal

liability, and the case required no detailed explanations on that point. At any rate, the defendants have no reason to complain of the rule laid down ; it was, at least, sufficiently favorable to them, for the term, " inevitable accident," has been criticised, not because it would change the law to the disadvantage of the carrier, but on the ground that, if admitted, it would relax the stringent rule of the common law, and embrace cases of accident which must be regarded as inevitable, though not happening from causes that fall under the legal definition of the act of God or of the public enemy ; such as the irresistible force of robbers, or such as fires, commencing elsewhere and spreading to places in which the goods were kept by the carrier. Angell on Carriers, secs. 154 and 156 ; *Forward* v. *Pittard,* 1 T. R. 27, 33.

The court instructed the jury that the defendants were bound to the highest degree of care and diligence, and were liable for every injury to the saw, except such as human care and foresight could not prevent. The objections to these instructions appear to go on a mistake of the grounds upon which the legal liability of common carriers rests. They are not charged because they are shown to have been actually negligent, but because the law, upon reasons of public policy, except in certain specified cases, holds them to the liability of insurers. Even inevitable accidents, unless they can be classed under the legal head of acts of God or the public enemy, will not excuse them. Considered in the abstract, the instructions of the court were, perhaps, not strictly accurate, for they might seem to imply that there was a degree of care and diligence, which would, as a general rule, and in all cases, discharge the carrier. But the error, if there was any, was on the side of the defendants, and no ground of exception for them.

Beside, there was nothing in the case to make a particular explanation of the limits and qualifications of a common carrier's liability necessary or material.┊ If the saw was injured while in the defendants' charge, they were legally liable, inasmuch as in that case the burden of proof was on them to show that the injury happened from some cause that would furnish them with

a defence, and no evidence was given tending to prove any such cause.

The motion in arrest of judgment is not insisted on, and cannot prevail.   The declaration does not allege that a compensation was paid, or agreed to be paid, for carrying the saw.   But the action being in case, this was not necessary, as was held in *Coggs* v. *Barnard.*

*Judgment on the verdict.*